**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| LARRY JOHN LITTLE, Jr., | Civil No.        08cv1043 JM (PCL) |
|---|---|
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS** |
| D.K. SISTO, Warden, | |
| Respondent. | |

## I.    INTRODUCTION

Petitioner Larry John Little, a prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction San Diego County Superior Court case number SCE198946 for second degree murder with a true finding that he used a deadly and dangerous weapon. (Lodgment 1, at 242.) The trial court also found two prior prison term enhancements true as charged. (Id. at 240.) The petition states eight claims. (Pet. at 1-9.) This Court filed a Report and Recommendation, which discerned six claims. (Doc. 26, at 5.) The District Court agreed, adopting the Report and Recommendation. (Doc. 32.) This Court determined that one of the six claims was unexhausted and, to avoid dismissal of his entire petition, Petitioner elected to proceed with his exhausted claims, thus five claims remain. (Doc. 26, at 10, Doc. 34.)

This case is before the undersigned Magistrate Judge pursuant to S.D. Cal. Civ. R. 72.1(d)(4) for Proposed Findings of Fact and Recommendation for Disposition. For the reasons set forth below, the Court respectfully recommends that the Petition be **DENIED**.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Summer v. Mata, 449 U.S. 539, 550 (1981) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken verbatim from the California Court of Appeal's opinion denying Little's direct appeal of his conviction.

*A. June 15, 1999-Roesch, Rabatore, Brooks and Little*

In June of 1999, Eddy Rabatore and his mother, Joyce Roesch, lived in El Cajon in an apartment on First Street. Some time around noon on June 15, 1999, Alysen Brooks, a friend of Rabatore, came to the apartment with another woman, Mary Ross. The women were there to meet with Joyce Roesch, who was planning to move into another apartment, with Mary Ross. There were then between six and eight people present at the Rabatore apartment, including Little, who was arguing with someone over cigarettes. Brooks went outside and waited in her car for Ross and Roesch.

The three women ran a few errands, and then returned to the apartment later in the afternoon. Roesch had asked Little to get everyone out of the apartment, and the group moved into the parking lot, again arguing. After the others left, Brooks remained at the apartment with Roesch, Little and Rabatore. Some time after six in the evening, another argument began. Behaving in a belligerent manner, Little called Rabatore a "punk-ass bitch," picked up a glass object, and threw it at Rabatore.

At this point, Roesch told Little that she wanted him to leave. Little refused, and said that he was tired and was going to lie on the couch and try to sleep, which he did. Roesch then told Rabatore she wanted Little to leave, and asked her son to call a friend to help remove Little from the apartment. Rabatore called his friend, Israel Ackerman, and Ackerman agreed to come over if Rabatore would pick him up. Rabatore called again in a few minutes and said he would pick up Ackerman, but he never did. During both of the telephone conversations with Rabatore, Ackerman could hear arguments going on in the background.

After Rabatore had called Ackerman, Roesch left the apartment, and only Brooks, Little and Rabatore remained. Before Roesch left, however, Little told her and Rabatore: "You don't want to cross me. If you want to do this, fine. We'll do it that way. But it will be a bloodbath. Because if you have your friends come over, then I'll call my brother Woods and the Martel brothers out in the Lakeside, and we'll make this into a riot, into a bloodbath. That's up to you ." Little then began gathering his belongings and putting them into a backpack.

While Little was gathering his belongings, Rabatore went to the kitchen and got a steak knife, which he put in his pocket. Rabatore showed the steak knife to Brooks, who told him to get rid of it because it would only cause trouble. While Little was in the bathroom, Rabatore put the steak knife on a sewing machine cabinet in his mother's room. Rabatore and Brooks then sat down at the dining room table and had cocktails, while Little went rummaging from room to room in the apartment, looking for his possessions.

*B. The Stabbing of Rabatore*

While Rabatore and Brooks were sitting at the dining room table, Little came into the dining room and made a threat about getting even with people who cross him. Little first picked up his backpack as if preparing to leave, but then he put the backpack down, picked up a glass figurine from a table, and threw the figurine at Rabatore. Brooks saw Rabatore lean back in his chair, attempting to deflect the thrown object with his hands. Little then stepped forward and struck at Rabatore, appearing to Brooks to attempt to punch Rabatore in the face, but hitting him in the arm. At this point Rabatore yelled out "Oh, my God." As Rabatore leaned back in his chair, Brooks could see blood coming out of Rabatore's arm.

Little then, standing over Rabatore, plunged a wooden-handled steak knife directly into Rabatore's chest. Little then picked up his backpack, looked coldly at Brooks, and ran out of the apartment door. Rabatore screamed that he had been stabbed, stood up, took two steps, and then fell back onto a table and collapsed. Brooks, a registered nurse, called 911 and then tried to put pressure on Rabatore's wound. Rabatore stopped breathing, Brooks performed CPR upon him, and later Rabatore stopped breathing again and his heart stopped. Paramedics then arrived at the apartment, and they took Rabatore to the hospital. Rabatore was, however, pronounced dead 40 minutes later, after attempts to resuscitate him at the hospital were unsuccessful.

*C. The Autopsy of Rabatore*

An autopsy revealed that the stab wound on Rabatore's arm was over two inches long and two and a half inches deep. The chest wound was about two and a half inches long, and about five inches deep. Little had pushed the knife through Rabatore's second and third ribs (cutting the third rib), through the right lobe of Rabatore's lung, through the pericardial sac, and on through the right atrium of Rabatore's heart, until the knife pierced Rabatore's aorta. The direction of the chest wound was from right to left, and slightly upward. Little had to have pushed the entire length of the knife blade into Rabatore's chest in order to reach as far as his aorta.

*D. Subsequent Events-Little at Donovan State Prison*

The day after Rabatore's murder, police arrested Little. Although he had been wearing a mustache at the time he stabbed Rabatore, Little had shaved it off at the time of his arrest. That same day, a neighbor who lived across the street from Roesch and Rabatore found the knife used in the murder in his back yard. The knife was bent, and had Rabatore's blood upon it.

Little was sent to Donovan State Prison in July of 1999, where he was housed with an acquaintance, Robert Teal.[1] After Rabatore's murder, Teal got a message that Little wanted to see him. In Donovan, Teal asked Little why he sent the message. Little said he had stabbed someone and had wanted Teal to get him out of town. Over the next days, Little spoke at length with Teal and others about the murder.

Little explained to Teal that he had been staying with a woman and her son, Ed, and Ed, who was unhappy with Little's selling and possessing drugs, had been nagging Little to leave. Little said that just before the murder, there had been another argument, and after he gathered up his belongings, he went to the room where Ed and a woman were sitting, then went into the kitchen and got a knife, and went back to the room where Ed and the woman were, reached across the woman, and stabbed. Little told Teal that

---

[1] Footnote 1 in the original reads: The testimony of Teal is the subject of Little's third assertion of error.

because the woman screamed, he thought he might have stabbed her, and so he stabbed again, this time striking Ed in the chest. Little said he left and took the knife with him, discarding it where he thought it would not be found.

Little went on to point out to his audiences at Donovan, including Teal, there had been only one witness to the murder, and "if this broad would just get knocked off or just get taken out of here until this was over, I'd walk free." Little mentioned that Brooks was a nurse, and in many conversations referred to having "this bitch knocked off." Little was also forthcoming about his planned trial defense. He stated he had told the police that Rabatore had picked up an ashtray and attempted to hit Little with it, and that his stabbing of Little was a mere reflexive (self-defense) action. Little also admitted to Teal that this story upon which he planned to rely was wholly fabricated.[2]

### *E. The Defense Case*

Little testified and admitted prior convictions for receiving stolen property and possessing drugs for sale, but stated he had not tried to fabricate a defense and he never wanted Brooks to be "knocked off." Little told the jury he had been stabbed in the eye at an earlier time, which left him blind in that eye and "jumpy ." Little went on to say that on June 15, 1999, everyone at the apartment but him had been using methamphetamine. Little testified that Rabatore used some methamphetamine and became hyperactive and aggressive. Little also said Rabatore called friends to come beat Little, and told Little he would be "wiped out by some guys." Little did not credit these statements, and so did not leave. Little claimed he realized Rabatore was serious when he heard Rabatore tell his mother to wait outside for his friends.

The core of Little's testimony was that after he had collected his belongings and prepared to leave, Rabatore had then told him not to go anywhere, picked up an ashtray and blocked Little's egress from the apartment. At this point, Little said, he picked up a knife from a table, and when Rabatore lunged at him with the ashtray, Little made two jabs with the knife and ran out the door. Little claimed at this point Rabatore was standing, and Little was unaware he had actually stabbed Rabatore until he was told so in prison. Little said he did not contact police because he had been unaware he had killed Rabatore, and he had not attempted to change his appearance. Little admitted, however, that he did not see Rabatore with a knife that evening.

### *F. Rebuttal*

A witness who had earlier corroborated Little's claim he had not been using drugs on the day of the murder also told police he believed Little was under the influence of drugs that day. The witness also told police that Little had been acting aggressively towards Rabatore that day, and this had made him so uncomfortable that he had left the apartment.

(Lodgment 6 at 2-17.)

### III. PROCEDURAL BACKGROUND

On December 4, 1999 the San Diego County District Attorney filed an information charging

---

[2] Footnote 2 in the original reads: Little also told Teal that although Rabatore had threatened to call someone to come over and help him get Little out of the apartment, he was never concerned that this might actually happen.

1  Petitioner Larry John Little with one count of murder, a violation of California Penal Code § 187, and
2  alleging personal use of a deadly and dangerous weapon, to wit: a knife within the meaning of California
3  Penal Code § 12022(b)(1), in the commission of the offense. (Lodgment 1, at 1.) The information also
4  alleged Little had suffered a two prior prison terms within the meaning of California Penal Code §§
5  667(b) and 668. (Id. at 2.)

6  A jury found Little guilty of second degree murder and determined true that Little had used a
7  deadly and dangerous weapon as charged. (Id. at 136.) The trial court found the two prison priors true
8  as charged and sentenced Petitioner Little to a combined term of 18 years to life in prison. (Id. at 209.)
9  On October 10, 2001, the California Court of Appeal affirmed the judgment. (Lodgment 6.) Then, on
10 December 19, 2001, the California Supreme Court denied Little's petition for review. People v. Little,
11 2001 WL 1194641 (Cal. App. Dist. 4, 2001).

12 Acting *in propria persona*, Little filed a petition for writ of habeas corpus in the San Diego
13 County Superior Court (Case number EHC388) on December 27, 2002. In that petition, Little argued
14 that he had been denied his constitutional right to effective assistance of counsel when his trial counsel
15 did not investigate and present evidence to support a defense theory of imperfect self-defense based on
16 PTSD. (Lodgment 8, at 7.). The court issued an order to show cause why relief should not be granted
17 only as to Little's claims of ineffective assistance of counsel. (Id.) The court appointed counsel to
18 represent Little in the order to show cause proceedings. (Id.) After considering the People's return and
19 Petitioner's denial of the return, the court held an evidentiary hearing and then issued an order denying
20 the petition on August 26, 2004. (Id.)

21 On November 3, 2005, Little filed a petition for writ of habeas corpus in the California Court of
22 Appeal asserting that he was denied effective assistance of counsel when his trial counsel did not
23 investigate, and present evidence on, a defense theory of imperfect self-defense based on PTSD. (Id. at
24 8.) Little also asserted that he was denied effective assistance of counsel when his trial counsel failed
25 to: (1) investigate the facts of the case; (2) interview or subpoena the victim's mother and other witnesses
26 regarding drug use and violence at her apartment; (3) present evidence on the effect of Little's alcohol
27 use and lack of sleep on his state of mind; (4) impeach the prosecution's key witness; (5) request an
28 involuntary manslaughter instruction; and (5) thoroughly object to admission of an informant's

testimony. (Lodgment 8, at 8, n.4.) The Petition also asserted Little was denied due process of law when the trial court did not instruct sua sponte with CALJIC No. 3.37. (Id. at 8, n.3.) Little argued he was denied effective assistance of counsel when his appellate counsel failed to: (1) file a petition for writ of habeas corpus based on ineffective assistance of his trial counsel and other matters outside the record; (2) move to correct the appellate court's misstatement of fact that the jury was instructed on involuntary manslaughter; and (3) argue the trial court's errors violated the federal Constitution. (Id. at 8, n.4.)

The Court of Appeal issued an order to show cause on the sole issue of whether trial counsel rendered ineffective assistance by failing to investigate a PTSD defense and also appointed counsel to represent Little in the proceedings. (Id. at 8.) Through his appointed counsel, Little filed a supplemental petition, which the court considered along with his original petition. (Id.) Thereafter, on January 16, 2008, the court issued a reasoned opinion denying Little's claims for ineffective assistance of trial counsel and summarily denying all his other claims. (Id. at 1.) On January 24, 2008, Little's appointed counsel filed a petition for review in the California Supreme Court addressing only the issue of ineffective assistance of counsel for which she had been appointed. (Lodgment 6A.) Upon learning of this petition, Little attempted to supplement the petition in an effort to exhaust all of his claims in state court. (Doc. 1-1, at 63.) The Supreme Court rejected Little's supplemental petition because there was no provision in the rules to supplement a pending petition and denied his petition for review on March 12, 2008. (Lodgment 5A.)

On June 7, 2008, Little filed a Petition for Writ of Habeas Corpus in this Court, (doc. 1) and then, because Little had failed to allege exhaustion of all claims in state court, this Court issued an options order detailing the options available to Little. (Doc. 5.) Little then filed a Motion to Stay the proceedings in order to return to state court with his unexhausted claims. (Doc. 10.) While that Motion was pending, Little filed a second habeas petition in the California Supreme Court on August 10, 2008. (Lodgment 6, at 1.) The Supreme Court denied the petition citing In re Robbins, 18 Cal. 4th 770 (1998), and In re Clark, 5 Cal. 4th 750 (1993).[3] (Id.) On March 20, 2009, the District Court issued an Order Granting the Motion to Stay as moot because Little exhausted his state remedies while the Motion was pending. (Doc.

---

[3] A citation to In re Robbins indicates the petition was untimely filed and the court denied review on the merits, 18 Cal. 4th 770 (1998). A citation to In re Clark indicates the petition was untimely and repetitive of prior petitions, 5 Cal. 4th 750 (1993).

20, at 9.)

This Court issued an order to respond and the Respondent filed a Motion to Dismiss arguing that Little's Petition must be dismissed as a mixed petition containing unexhausted as well as exhausted claims. (Doc. 23.) The District Court then issued an Order Granting Respondent's Motion to Dismiss unless, within 30 days, Little elected for forgo his unexhausted claims. (Doc. 32.) Little then filed a Motion to Proceed with Exhausted Claims, (doc. 33) which was granted on April 27, 2010, (doc. 34). Respondent filed a second Motion to Dismiss arguing that Little's Petition was untimely. (Doc. 39.) This court issued a Report and Recommendation referring to our earlier Report and Recommendation, which had already determined that Little's Petition was timely. (Docs. 42 and 26.) The District Court adopted that Report in full and denied Respondent's Motion to Dismiss. (Doc. 43.) Pending on the docket is Respondent's Answer to the Petition, filed March 4, 2011. (Doc. 47.) Little filed a Traverse on May 19, 2011. (Doc. 53.)

**IV.  DISCUSSION**

  A.  *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 72 (2003).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those

1  decisions to the facts of a particular case.  Bell, 535 U.S. at 694.  An incorrect or erroneous application
2  is not sufficient to find that the state court's application of governing federal law was objectively
3  unreasonable, rather, the state court's determination that a claim lacks merit precludes federal relief so
4  long as "fairminded jurists" could disagree" on the correctness of the state court's decision.  Harrington
5  v. Richter, ___ U.S. ___ , 131 S.Ct. 770, 786 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the reviewing court "looks through" to the underlying appellate court decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  If the state court does not supply reasoning for its decision , federal habeas review is not de novo but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Andrade, 538 U.S. at 75-76).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim.  Packer, 537 U.S. at 8.  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law.  Id.

B. *Analysis*

This Court discerned six claims in Little's petition.  (Doc. 26, at 7.)  One of the six was unexhausted, therefore five remain.[4]  (Doc. 32.)  The remaining claims are as follows:

> Petitioner asserts two claims of ineffective assistance of counsel; one for failure to prepare and present mental defenses at trial (Claim One) and one for failure to investigate Petitioner's PTSD (Claim Two). Petitioner also presents . . . one claim of ineffective assistance of appellate counsel (Claim Four), one claim of trial error for refusal to instruct the jury pursuant to CALJIC No. 3.37 (Claim Five) and one claim of erroneous jury instructions based on application of CALJIC 8.40 (Claim Six).

(Doc. 26, at 7.)

Respondent counters that the state court's denials of the claims were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Doc. 47-1, at 6.)  Respondent contends that Little's claims regarding instructional errors must be dismissed because they do not present

---

[4] Because the issues were defined by a previous Recommendation of this Court, which was adopted by the District Court, further analysis will rest on that finding.  See Arizona v. California, 460 U.S. 605, 618 (1983) (The law of the case doctrine is an amorphous concept that directs the discretion of the court and serves to promote judicial economy.  The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.")

1  cognizable claims or, in the alternative, denied because the state court reasonably rejected these claims.
2  (Doc. 47-1, at 24.) Respondent also contends that Little is not entitled to an evidentiary hearing. (Id.)
3  In his Traverse, Little disagrees. (Doc. 53, at 2.)

          1.    *Ineffective Assistance of Counsel (claims one and two)*

Little raises two claims for ineffective assistance of counsel, one for failure to prepare and present mental defenses at trial, and another for failure to investigate Little's PTSD. (Doc. 26, at 7.) Little contends that, had the evidence of his PTSD been introduced, he likely would have been found guilty of voluntary manslaughter at most. (Doc. 1, at 64.) The two claims are related as they both would have been used "to explain how PTSD and/or the other mental disorder(s) may have affected his mental state, perception, and actions when he killed Rabatore," (lodgment 8, at 29) and therefore will be discussed together.

At trial, Little testified that he had previously been stabbed in the eye, which left him blind in that eye and "jumpy." (Lodgment 6, at 6.) Little further testified that on the day of the murder, everyone present at the apartment had been using methamphetamine and that the victim had become hyperactive and aggressive. (Id.) Little stated that the victim had called some friends to come and beat Little and told Little he would be "wiped out by some guys." (Id.) Little's defense theory was based on his testimony that the victim had thrown an ashtray at Little and Little then stabbed the victim in self-defense. (Id.) The evidence of Little's PTSD was therefore relevant to support an imperfect self-defense theory, to show that he did not possess the requisite mental state to support a murder verdict (malice), and to enhance his credibility because it would have shown that he had an actual, though unreasonable, belief in the need to defend himself.[5]

Under § 2254(d), a petitioner must establish that the state court's application of governing federal law was unreasonable. The governing federal law in ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). The Supreme Court, in Strickland, held:

---

[5] The California Court of Appeal declined to discuss prejudice with respect to a true self-defense theory because that court believed that Little's strongest defense would have been imperfect-self defense, and therefore, it was not reasonably probable that a jury would have found Little acted reasonably in defending himself and acquitted him on all charges. (Lodgment 8, at 36, n.15.) After reviewing the trial and appellate records, this Court agrees.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 688.

Applying the Strickland standard, the California Court of Appeal determined that Little's counsel at trial did perform deficiently, but concluded that Little's defense was not prejudiced by the deficient performance. (Lodgment 8, at 27, 36, and 42.) The court concluded that although evidence of Little's PTSD would have provided substantial evidence to support a different verdict, the presence of such evidence was not sufficient to show that it was reasonably probable a different verdict would have resulted. (Id.) The court stated it was Little's burden to show by a preponderance of the evidence that it was reasonably probable he would have obtained a more favorable result had his counsel's performance not been deficient. (Id. at 34.)

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Richter, 131 S.Ct. at 786 (citations omitted). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with Supreme Court precedents. Id. Moreover, the standards in Strickland as well as in § 2254(d) are both highly deferential and, when applied in tandem, are doubly so. Id. at 788 (citing Murphy, 521 U.S. at 333, n.7; Knowles v. Mirzayance, 556 U.S. 111, ___ (2009)). In order for this court to grant a writ of habeas corpus, Little must establish that there is no possibility any fairminded jurist could disagree that the state court correctly applied Strickland in concluding that Little was not prejudiced.

Strickland does not ask whether a court can be certain counsel's performance had no effect on the outcome or whether a reasonable doubt could have possibly been established, but rather whether it is "reasonably likely" the result would have been different. Richter, 131 S.Ct. at 786 (citing Wong v. Belmontes, 558 U.S. ——, ——, 130 S.Ct. 383, 390,(2009) (per curiam) (slip op., at 13).) "The likelihood of a different result must be substantial, not just conceivable." Id. The court in Richter

concluded that counsel's failure to obtain expert testimony was insufficient to establish prejudice in the face of the prosecution's other evidence of guilt, including the petitioner's flight from the crime scene, disposal of the murder weapon, and the improbability of the petitioner's version of events. Richter, 131 S.Ct. at 792.

Similarly here, the California Court of Appeal concluded that Little was not prejudiced because even if evidence of his PTSD or other mental defenses had been introduced, a more favorable verdict would not likely have resulted in light of the prosecution's evidence. Specifically, the court noted that the jury implicitly found credible the testimony of Brooks, who witnessed the murder, and did not find Little's testimony credible. (Lodgment 8, at 37.) The court also weighed the facts that Little fled the scene rather than calling the authorities as would be expected if he truly believed in the need to defend himself, disposed of the knife he used to stab the victim, altered his appearance after the stabbing, and "looked coldly at Brooks" before leaving the scene. (Id. at 38.) After reviewing the entire record, the court concluded that these facts supported a finding that Little was conscious of his guilt and had not acted in either true or imperfect self-defense. (Lodgment 8, at 38.)

The court further noted that the informant Teal's testimony supported a finding that Little acted with malice and intent. (Id. at 39.) Teal testified that Little stated he planned to fabricate a defense of self-defense, that Little stated he had contacted Teal because he believed Teal could help get him out of town, that Little had admitted that he never credited the victim's statements that some guys would come over and beat Little up, and that Little had expressed a wish that the only witness be "knocked off."[6] The state court found that a jury would likely have credited this testimony. (Id.) In light of the significant prosecution evidence of guilt, the court concluded that Little had not met his burden to demonstrate a reasonable probability that the outcome would have been different if evidence of his PTSD had been introduced. (Id. at 42.)

---

[6] Petitioner Little bases his Petition in part on a claim that Teal's testimony should not have been admitted and that this Court must review the entire record in comparison to the evidence of PTSD another mental defense that should have been introduced. This ground for relief was unexhausted in the state court, however. Moreover, even if Teal's testimony had been excluded, there was ample other prosecution evidence of malice and intent so that the state court might reasonably have concluded that Little did not meet his burden to show it was reasonably likely that Little would have obtained a more favorable verdict.

1    Under the doubly deferential standards of § 2254(d) and Strickland, this Court cannot conclude that Little is entitled to habeas relief on his claims of ineffective assistance of counsel. He has not demonstrated beyond all possibility that "fairminded jurists could disagree," Richter, 131 S.Ct. at 786, the California Court of Appeal reasonably applied the prejudice prong of Strickland when it held that the defense evidence, including evidence of PTSD evidence, would not have raised a reasonable doubt in the mind of at least one juror. Put another way, Little has failed to show that the state court unreasonably applied federal law in concluding it was not reasonably likely that evidence of Little's PTSD would have brought about a different result. Bell, 535 U.S. at 694.

Therefore, Little's claims of ineffective assistance of counsel are hereby DENIED.

2.    *Ineffective Assistance of Appellate Counsel (claim four)*

Under Ylist v. Nunnemaker, this court must defer to the last reasoned decision in denying Little's state habeas petition, 501 U.S. 797, 805-06 (1991). However, other than the claim of ineffective assistance of counsel for failure to investigate and present evidence of PTSD or other mental defenses, the California Court of Appeal summarily denied all of Little's habeas claims. (Lodgment 8, at 43.) In addition, the San Diego County Superior Court, in its order denying relief, stated that no evidence was presented on the issue of ineffective assistance of appellate counsel. (Doc. 1-1. at 36.)

In his present Petition, Little claims that he was denied effective assistance of appellate counsel when his counsel on appeal failed to file a "Rule 24" motion to correct a factual misstatement in the appellate court's opinion, failed to file a writ of habeas corpus to raise matters not in the record, and failed to raise meritorious arguments. (Lodgment 1, at 95.) Little does not identify any statutory authority for his "Rule 24" ground. Federal Rule of Civil Procedure 24 refers to intervention - a concept not relevant here. F.R.C.P. 24. Moreover, a federal rule would not have applied in state court. Finally, this court cannot find any applicable "Rule 24." Petitioner cites Smith v. Robbins, 528 U.S. 259 (2000) in his Petition, however Smith is inapposite and does not persuade this Court that Little's claims of ineffective assistance of appellate counsel have any merit.

The factual misstatement Little complains of can be found in the appellate court's decision upholding his conviction, where the court mistakenly states that the jury had been instructed on

involuntary manslaughter. (Lodgment 6, at 14-15.) Little believes that such an instruction was needed because, at trial, the jury was given CALJIC 8.40, which instructed the jury that intent was an element of voluntary manslaughter. (Id.) That instruction was deficient, however, because the California Supreme Court has held that an unintentional killing may also be voluntary manslaughter. Id. The court reasoned that even though CALJIC 8.40 did not conform to current caselaw, it was not prejudicial because the jury had been given the involuntary manslaughter instruction to be applied if they found the killing unintentional. (Id.) Little argues that since the court based its conclusion, in part, on the misstatement regarding involuntary manslaughter instructions, its decision is invalid. (Doc. 1, at 95.)

In concluding the incorrect instruction was harmless, the court stated that if a jury found that Little unintentionally killed the victim in an honest belief that he was in peril, it could not convict him of murder or voluntary manslaughter because both required intent under the instructions given. (Id.) The court went on to state that if the jury believed Little killed unintentionally it would have convicted Little of involuntary manslaughter, on which it erroneously stated the jury was instructed. (Id.) The court then concluded that because the jury convicted on second degree murder, it did not believe Little had killed in self-defense. (Id.)

Supposing that Little's appointed counsel failed to perform within the range of professional conduct required under Strickland by not seeking a correction, any error the court made in relying on the jury having heard the involuntary manslaughter instruction was harmless. The court correctly noted that the jury was instructed on the distinction between murder and manslaughter. (Lodgment 1, at 112, 115, and 121.) It was also instructed that in order to find Little guilty of murder, the prosecution had to prove that he killed intentionally. (Id.) As the court noted on direct appeal, the jury did not believe that Little killed unintentionally - it convicted him of second degree murder. Thus, a jury would not have found an instruction on involuntary manslaughter applicable. The appellate court's mistaken statement that such instruction was given did not prejudice Little. Therefore, Little cannot meet the dual prongs of unprofessional assistance of counsel coupled with prejudice required to demonstrate that he received ineffective assistance of appellate counsel. Strickland, 466 U.S. at 688.

As to Little's contention that he received ineffective assistance of appellate counsel for her failure

1  to file a habeas petition, petitioners are not entitled to appointed counsel for habeas petitions. <u>Coleman</u>
2  <u>v. Thompson</u>, 501 U.S. 722, 757 (1991). Therefore, Little cannot complain that his appointed counsel
3  failed to file such a petition.

4  Petitioner also contends that he received ineffective assistance of appellate counsel because he
5  and his family requested that his appellate counsel raise certain issues, but she did not do so. (Doc. 1,
6  at 95.) Little argues that this failure to "raise meritorious claims" denied him a fundamental
7  constitutional right. (<u>Id</u>.) Counsel's performance on appeal is accorded the same deferential standard
8  as trial counsel. <u>Robbins</u>, 528 U.S. at 285 (2000) (citing <u>Strickland</u>, 466 U.S. at 697.) Further, counsel
9  is not required to raise every nonfrivolous claim in a merits brief, but rather may select from among them
10 in order to maximize the likelihood of success on appeal. <u>Id.</u> at 288 (citing <u>Jones v. Barnes</u>, 463 U.S. 745
11 (1983)). Therefore, Little's disagreement with his appellate counsel about which issues to raise on appeal
12 does not merit a finding that his counsel's performance fell below acceptable professional standards.

13 Accordingly, this Court determines that the state court's denial of Little's claim of ineffective
14 assistance was not contrary to or an unreasonable application of federal law.

15 For the foregoing reasons, Little's claim of ineffective assistance of appellate counsel is hereby
16 DENIED.

17        3.    *Instructional Errors (claims 5 and 6)*

18 Petitioner Little claims trial error for the court's refusal to instruct the jury pursuant to CALJIC
19 3.37 and for giving an erroneous jury instruction pursuant to CALJIC 8.40. (Docs. 1, at 97-114 and 26,
20 at 7.) Respondent contends that federal habeas claims asserting instructional error under state law
21 generally provide no basis for relief. (Doc. 47-1, at 19.)

22 Indeed, it is true that erroneous jury instructions generally provide no basis for relief on federal
23 habeas review. <u>Estelle v. McGuire</u>, 502, U.S. 62, 72 (1991); and <u>see</u> <u>Marshall v. Lonberger</u>, 459 U.S.
24 422, 438, n. 6,(1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely
25 tuned review of the wisdom of state evidentiary rules"). The question is whether the deficient instruction
26 so infected the entire trial that the resulting conviction violates due process. <u>Id.</u> (citing <u>Cupp v.</u>
27 <u>Naughten</u>, 414 U.S. 141, 147 (1973)). In addition, the instruction must be considered in the context of
28

the instructions as a whole and the trial record. <u>Estelle</u>, 502, U.S. at 72. Thus, in order to review Little's claims of erroneous jury instructions, Little must demonstrate that any errors, in the context of the entire trial record, so infected that record as to amount to a violation of due process.

        a.  *Failure to Instruct the Jury Pursuant to CALJIC 3.37*

   CALJIC 3.37 instructs that the amount of knowledge a reasonable person with impaired physical faculties should possess is the knowledge which a person with similar impairments should possess under similar circumstances to those in evidence. (Lodgment 1, at 71.) Little presented evidence of his vision impairments and requested this instruction on the issue of the reasonableness of his belief in the need for self-defense. (Doc. 1-1, at 106.) The trial court refused the instruction on the basis that it was improper because it was limited to cases in which criminal negligence was involved and the appellate court agreed. See <u>Ylist</u>, 501 U.S. at 805-06 (1991); CALJIC 3.37; (Lodgment 6, at 9.) Little contends that the comment to the instruction states that it applies not just to criminal negligence, but whenever the reasonableness of the defendant's conduct is in issue, and therefore, this Court should review the appropriateness of the instruction. (Doc. 1, at 99.)

   However, as demanded in <u>Estelle</u>, before the instructions can be reviewed by a federal court the instruction complained about must be considered in the context of the entire trial and must have so infected the trial as to amount to a violation of due process. <u>Estelle,</u> 502, U.S. at 72. "Before a federal court may overturn a conviction resulting from a state trial in which [a challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-43 (1974) (internal quotations and citations omitted). Taken in the context of the entire trial record and the other instructions, this Court does not believe the instruction violated due process, but will analyze both the due process standard and the putative instructional errors nonetheless.

   In determining that the instruction did not apply to Little's case, the appellate court noted that CALJIC 3.37 stemmed from a single case in which a blind and hearing impaired man was accused of exhibiting a firearm in the presence of a peace officer. (Lodgment 6, at 10.) In that case, the instruction

1 was given on the point of whether the defendant reasonably should have known the people entering his home were peace officers - an element of the crime. (Lodgment 6, at 10.) Assuming, hypothetically, that the appellate court was incorrect and the instruction should have been given, its omission did not amount to a violation of due process. The appellate decision reasoned that because the jury was given the substance of the requested instruction in other instructions, "there is no possibility whatsoever that refusal of the instruction contributed to the verdict herein." (Id.) In fact, the jury was instructed pursuant to CALJIC 8.50 Murder and Manslaughter Distinguished, CALJIC 5.12 Justifiable Homicide in Self-Defense and CALJIC 5.13 Justifiable Homicide - Lawful Defense of Self. (Lodgment 1, at 109, 111.)

CALJIC 5.12 instructs that for the jury to find a defendant acted in self-defense, the "circumstances must be such as would excite the fears of a reasonable person placed in a similar position . . . ."[7] CALJIC 5.13 instructs that homicide is justifiable and not unlawful when done in self-defense, whether the danger is real or "merely apparent." These instructions gave the jury the option to acquit Little if it believed he actually and reasonably believed that he needed to defend himself. CALJIC 5.12, 5.13. CALJIC 8.40 gave the jury the option to find Little guilty of voluntary manslaughter if it believed that Little intentionally killed with the honest but unreasonable belief in the need to defend himself. Even so instructed, the jury convicted Little of murder indicating that it believed evidence that Little stabbed the seated victim and then sought to prevent the only eyewitness from appearing in court - in other words, that Little killed intentionally or with malice. Thus, taken in the context of the trial record and of the other instructions read to the jury and assuming Little was entitled to the requested instruction, though he was not, the omission did not deprive Little of any constitutional right and is not subject to review by this Court. Donnelly, 416 U.S. at 643.

For the foregoing reasons, Little's claim of trial error for failure to instruct pursuant to CALJIC 3.37 is hereby DENIED.

        b. *Erroneous Instruction to the Jury Pursuant to CALJIC 8.40*

Little argues his conviction should be overturned because CALJIC 8.40 is deficient in that it

---

[7] The jury was given evidence that the similar position was that of a man blind in one eye. (Lodgment 2, at 738-44.)

1 erroneously instructs the jury that intent to kill is an element of voluntary manslaughter. (Doc. 1-1, at
2 111.) Shortly after Little's conviction, California Supreme Court, in People v. Lasko, held that, while
3 an intentional killing can be voluntary manslaughter, "voluntary manslaughter is . . .[also] committed
4 when a defendant, acting with conscious disregard for life and the knowledge that the conduct is
5 life-endangering, *unintentionally* but unlawfully kills while having an unreasonable but good faith belief
6 in the need to act in self-defense," 23 Cal. 4th 101, 104 (2000) (emphasis added). Thus, Little argues,
7 CALJIC 8.40 should not have been given because, "under the instructions given, the jury's only option
8 was to convict Petitioner of second degree murder if they found the killing was unintentional, but
9 unlawful." (Doc. 1, at 114.)

10 The discussion of CALJIC 3.37 above is equally applicable here; an erroneous jury instruction
11 is not subject to review by a federal habeas court unless the error so infected the entire trial that the
12 resulting conviction violates due process. Estelle, 502, U.S. at 72. Federal habeas courts therefore do
13 not grant relief, as might a state appellate court, simply because the instruction may have been deficient
14 in comparison to the CALJIC model. Id. Finally, the instruction complained about must be considered
15 in the context of the entire trial and must have so infected the trial as to amount to a violation of due
16 process. Id.

17 The only question here then, is whether the erroneous instruction amounted to a violation of due
18 process. If the instruction did violate due process, then the writ can be granted only if the state appellate
19 court unreasonably determined that Little was not prejudiced by the erroneous instruction. (Lodgment
20 6, at 13-16.) Taken in the context of the other jury instructions, the jury had sufficient instruction so that
21 they were able to convict Little of a lesser offense or none at all. (Lodgment 1, 71-134.) Moreover, a
22 single erroneous instruction requiring intent to convict on voluntary manslaughter, in the face of
23 voluminous prosecution evidence of intent did not "infect the trial so as to amount to a violation of due
24 process."

25 The Supreme Court has refused to find a due process violation so as to warrant a grant of habeas
26 even where a trial court allowed erroneous admission of prior convictions for sentence enhancement at
27 the guilt determination stage. Longberger, 459 U.S. at 438 n.5 ("[T]he Due Process Clause does not

28

permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules: It has never been thought that decisions under the Due Process Clause establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.") (internal citations and quotations omitted). Here, the jury was instructed that, in order to find Little guilty of murder, it must find he killed intentionally, therefore Little's argument that a jury who found he killed unlawfully but unintentionally could only find him guilty of murder is unfounded.[8] (Lodgment 1, at 109.) Little is correct in pointing out that the appellate court mistakenly stated that the jury had been instructed on involuntary manslaughter, but this error was not prejudicial, because a jury instructed as Little's was would have to find intent, or at least malice, to convict Little of murder. Neither of which would be present if the jury believed the killing was done unintentionally under the actual but unreasonable need for self-defense.

The appellate court rested its denial of Little's jury instruction claims both on this lack of prejudice and on the fact that the jury, in convicting Little for murder, implicitly disbelieved his self-defense story, and instead, believed the "overwhelming" evidence of Little's intent to kill. (Lodgment 6, at 15-16.) Upon reviewing the instruction in light of the entire trial record, this Court agrees with the conclusions of the state court and cannot find that Petitioner's due process rights were violated by the given instruction nor, if they had been, that the state court unreasonably found that the error was not prejudicial.

For the foregoing reasons, Little's claim of trial error for instructing the jury pursuant to CALJIC 8.40 is hereby DENIED.

4. *Request for an Evidentiary Hearing*

Review of habeas claims that have been adjudicated on the merits in State court proceedings is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v.

---

[8] The trial court gave CALJIC 8.50: "The distinction between murder and manslaughter is that murder requires malice while manslaughter does not. When the act causing the death, though unlawful, is done in the actual but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury,] the offense is manslaughter. In that case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent. To establish that a killing is murder and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the actual, even though unreasonable, belief in the necessity to defend against imminent peril to life or great bodily injury]."

1  Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1401 (2011). Adjudicated on the merits means a decision
2  finally resolving the parties' claims that is based on the substance of the claim advanced, rather than on
3  a procedural, or other, ground. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). Review under
4  § 2254(d)(1) focuses on what a state court knew and did measured against Supreme Court precedent as
5  of the time the state court rendered its decision. Id. Therefore, a federal court must analyze whether a
6  state court's adjudication resulted in an unreasonable application of federal law to the facts that were
7  before it, and a federal court may only hold an evidentiary hearing with respect to claims that were not
8  adjudicated on the merits in state court. Id. This is the law with regard to evidentiary hearings as
9  announced by the Supreme Court on April 4, 2011. Thus, while AEDPA enumerates certain statutory
10 exceptions to the ban on evidentiary hearings in federal court, none of them applies here as Little's claims
11 were all "adjudicated on the merits" either on direct appeal or on state collateral review. Id.

12    Little's claims (one and two) of ineffective assistance of trial counsel were decided on the merits
13 during state habeas proceedings - both the California Superior Court and the California Court of Appeal
14 held hearings on these claims and denied relief - therefore, Little is not entitled to an evidentiary hearing
15 with respect to these claims. (Doc. 1-1, at 36; and Lodgment 8.)

16    The Superior Court of California denied Little's claim (four) of ineffective assistance of appellate
17 counsel because no evidence had been presented. (Doc. 1-1, at 36.) This does not constitute a procedural
18 denial, moreover, federal courts are not required to hold futile evidentiary hearings where, even if factual
19 basis the petitioner's claim were found to be true he would not be entitled to relief. Procunier v. Atchley,
20 400 U.S. 446, 489 (1971). As discussed above, Little did not present any basis that would afford him
21 relief for this claim, even if true. See *supra* pp. 11-14. Therefore, he is not entitled to an evidentiary
22 hearing on this claim.

23    Little's claims (five and six) of trial error for erroneous jury instructions were decided on the
24 merits by the state court on direct appeal. (Lodgment 6, at 8-16.) Later, unexplained decisions by state
25 courts are presumed to rest on the grounds set forth in the last reasoned decision. Ylst, 501 U.S. at 803.
26 Therefore, the state court's summary denial of these claims on habeas review constitutes a decision on
27 the merits and this Court may not hold an evidentiary hearing regarding these claims. Cullen, 131 S.Ct.

28

at 1401.

Accordingly, Little's request for an evidentiary hearing is DENIED.

### IV. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Jeffrey T. Miller under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the request for an evidentiary hearing and **DENYING** Petition for Writ of Habeas Corpus.

IT IS ORDERED that no later than **September 15, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **October 6, 2011**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: August 25, 2011

Peter C. Lewis
U.S. Magistrate Judge
United States District Court